## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TROY THOMPSON<br>P.O. Box 441333 Livingston Road<br>Fort Washington, MD 20749 | )<br>)<br>) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| THE CITY OF DISTRICT HEIGHTS, MARYLAND<br>and<br>DISTRICT HEIGHTS POLICE DEPARTMENT | )<br>)<br>) |
| | ) |
| Serve:  Kevin B. Karpinski, Esq.,<br>City Attorney for District Heights, MD<br>120 E. Baltimore Street<br>Suite 1850<br>Baltimore, MD 21202 | )<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |
| | ) |

### COMPLAINT

### FOR

### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### and
### JURY DEMAND

### COMPLAINT

Troy Thompson, an adult male resident of the State of Maryland, with personal knowledge as to himself, and upon information and belief as to all else, complains against Defendant City of District Heights, Maryland (the "City") and its agency District Heights Police Department ("DHPD") (collectively "Defendants") and states as follows:

Parties and Jurisdiction

1. Plaintiff Troy Thompson ("Plaintiff" or "Mr. Thompson") is an adult male resident of Maryland, born on April 27, 1976. The events complained of herein transpired within the State of Maryland.

2. Defendant City of District Heights, Maryland (the "City") is an incorporated city located in Prince George's County, Maryland.

3. Defendant District Heights Police Department ("DHPD") is the primary law enforcement agency for the City of District Heights.

4. Mr. Thompson filed a timely charge of discrimination with a local administrative agency, which was also cross-filed with the EEOC.

5. Mr. Thompson received his Notice of Right to Sue from the EEOC on December 1, 2020, and this Complaint is filed within 90 days of that date.

6. Jurisdiction of this Court over this Complaint alleging a violation of the federal Age Discrimination in Employment Act is proper pursuant to 28 U.S.C. § 1331.

Facts

7. Plaintiff reincorporates Paragraphs 1-6 as if fully set forth herein.

8. Mr. Thompson wanted to become a Police Officer in Prince George's County, Maryland.

9. In order to become a Police Officer, Mr. Thompson was required to complete a Police Academy – either at Prince George's Community College or at Anne Arundel Community College.

10. Mr. Thompson registered for courses at Prince George's Community College in February 2015. He started his training in April 2015. He completed the training in October 2015.

11.     He graduated from this class with the highest average of any recruit in his cohort.

12.     At the time he completed his police training and graduated from the Police Academy, Mr. Thompson was given a certification from the Maryland Police Training Commission, allowing him to apply to any department in Prince George's County.

13.     In 2015, he applied for a position with the DHPD.  He did not receive any response to his application.

14.     He reapplied to DHPD on or about February 2017.[1]

15.     He was interviewed for a position as a Police Officer by Chief Elliot W. Gibson, Sr.,  and Lieutenant Harrison on April 24.

16.     Mr. Thompson was informed on the same day that he passed his oral interview and was provided a document to complete with his background materials – which is commonly referred to in DHPD as the "Blue Book."

17.     He also received that day an email from a Corporal Joseph Gibson, confirming that he had been selected by Chief Gibson to move forward in the background processing phase of the recruit selection process for the DHPD.

18.     On April 27, Mr. Thompson had a birthday and turned 41 years old.

19.     On the evening of April 29, Mr. Thompson went out to an event at the District Heights Recreation Center and at the end of the evening ran into Lt. Harrison, who was there in uniform.

---

[1]Unless otherwise noted in the allegations of the Complaint, all dates discussed herein took place in 2017.

20. Lieutenant Harrison informed Mr. Thompson that Cpl. Gibson – the individual at DHPD responsible for processing background checks for new hires -- was also present.

21. Lieutenant Harrison brought Mr. Thompson and a friend of his over to where Cpl. Gibson was standing. Corporal Gibson was also in uniform. As they approached him, Corporal Gibson had his back turned away from Mr. Thompson.

22. Lieutenant Harrison spoke to Cpl. Gibson to get his attention. Lieutenant Harrison introduced him to Mr. Thompson, as one of the new candidates for the District Heights Police Department.

23. When Cpl. Gibson then turned around and saw Mr. Thompson, he asked him "How old are you?"

24. Mr. Thompson responded that he had just turned 41 years old.

25. Corporal Gibson responded, "You're too old."

26. Mr. Thompson felt immediately awkward at being rebuffed in this manner.

27. Nonetheless, he indicated to Cpl. Gibson that he had received his Blue Book, had completed it, and would be submitting it shortly.

28. Mr. Thompson said goodbye to Cpl. Gibson, and Mr. Thompson and his friend departed.

29. Mr. Thompson's friend noted the comment made by Cpl. Gibson regarding Mr. Thompson's age, and they discussed it in the car on the way home.

30. Mr. Thompson recounted Cpl. Gibson's comment to others during that weekend.

31. On May 2, Mr. Thompson reached out to Cpl. Gibson regarding some logistics pertaining to the completion of the Blue Book and scheduling of an interview.

32. On May 3, Cpl. Gibson contacted Mr. Thompson and said that he would be in touch the following week to set up an appointment for a background interview.

33. On May 11, Cpl. Gibson told Mr. Thompson that he had scheduled an interview for May 15.

34. Mr. Thompson, who was out of town and would be away on May 15, wrote back to Cpl. Gibson on May 12 to look for a different interview date – as he was scheduled to be out of town on a work-related trip.

35. Corporal Gibson responded and told Mr. Thompson that DHPD had placed all hiring on hold and that Mr. Thompson should just send the Blue Book in, and Cpl. Gibson would hold on to it.

36. When he returned from his work-related trip, Mr. Thompson submitted his Blue Book so that DHPD could begin processing his background check.

37. Corporal Gibson never began that process, although multiple background checks were started and completed during this time for other new candidates under the age of 40.

38. The following week, on May 24, Sergeant Gibson (formerly Cpl. Gibson) reiterated that all hiring had been put on hold and further represented that nobody had been hired for the vacant positions with DHPD.

39. Sergeant Gibson's statement that all hiring had been put on hold was a deliberate misrepresentation.

40. DHPD  had hired at least one new candidate on May 15.

41. This candidate was under 40 years old – as would be all the other candidates hired for positions between May 2017 and January 2018.

42. Approximately six months later, on or about November 22, Mr. Thompson was called in for another interview by the Chief.

43. Sergeant Gibson was present at this interview. He had not been present at the earlier interview Mr. Thompson had with Chief Gibson and Lt. Harrison.

44. During the interview, Chief Gibson recognized Mr. Thompson as someone he had already interviewed and mentioned this.

45. Mr. Thompson acknowledged his earlier interview and responded that he had submitted his Blue Book in May.

46. Chief Gibson then turned and made an inquiring look at Sgt. Gibson, who stated in response that Mr. Thompson had turned in his Blue Book "a while ago".

47. While Mr. Thompson was still in the room the Chief directed Sgt. Gibson to process Mr. Thompson's background check.

48. About two weeks later, not having had any follow up from Sgt. Gibson, Mr. Thompson emailed Sgt. Gibson on December 6.

49. On December 15, Mr. Thompson finally heard from Sgt. Gibson who indicated to him that he was directed by the Chief to process Mr. Thompson to be hired for a full-time Police Officer position.

50. Sergeant Gibson took no action to process the background information for Mr. Thompson.

51. Not having heard anything again for a lengthy period, on December 28, Mr. Thompson inquired of Sgt. Gibson again regarding his application.

52. On December 29, Sgt. Gibson informed Mr. Thompson that his Police Academy certification had expired.

53. Sergeant Gibson told Mr. Thompson that he would have to repeat the entire Police Academy course, and that DHPD would not process candidates with an expired certification.

54. This was a misrepresentation by Sgt. Gibson.  Because Mr. Thompson was a candidate already being processed by DHPD, he would not have to repeat the entire Academy course but would be required only to take a "refresher" to bring his certification up to date.

55. Sergeant Gibson was aware of this fact when he made this misrepresentation to Mr. Thompson. He made this misrepresentation because of age-related bias that Mr. Thompson was too old to be a Police Officer.

56. When Mr. Thompson discovered that Sergeant Gibson had given him in accurate information and wrote to Sgt. Gibson about having DHPD assist him in taking the process for the refresher course, Sgt. Gibson failed to respond.

57. DHPD  ceased all further communications with Mr. Thompson.

## Cause of Action

### Count One

### Violation of the Age Discrimination in Employment Act

58. Plaintiff reincorporates Paragraphs 1-57 as if fully set forth herein.

59. Plaintiff was fully qualified to be hired as a Police Officer with DHPD .

60. Sergeant Gibson was an official of DHPD and a City employee who had primary authority for processing the background applications for employment with the DHPD. His actions are imputed to DHPD and by extension, the City.

61. Sergeant Gibson and DHPD blocked Plaintiff's application process because Sgt. Gibson thought Plaintiff was "too old" to be a police officer.

62. Sgt. Gibson's assertion on April 29, 2017, that Plaintiff was "too old" was made during a conversation on the subject of Plaintiff's employment application process, for which Sgt. Gibson was largely responsible.

63. The statement made by the DHPD's and the City's designated police recruitment official, Sgt. Gibson, that Plaintiff was "too old" to be a Police Officer is direct evidence of bias against Plaintiff because of his age.

64. During the pendency of Plaintiff's application, Defendants processed background checks for, and hired multiple officers, all of whom were under the age of 40.

65. Plaintiff was more qualified for the position of Police Officer than other candidates who were hired and who were under the age of 40.

66. An audit conducted in 2018 by the Maryland Police and Correctional Training Commission (the "Audit") focused on irregularities in the hiring process by the DHPD.

67. The Audit turned up evidence that two officers hired instead of Plaintiff were not qualified psychologically to be hired by DHPD.

68. The Audit turned up evidence that an additional officer hired instead of Plaintiff was not qualified to be hired by virtue of that officer's score on a polygraph examination which revealed likely deception on the issue of recent drug use.

69. The Audit turned up evidence that one of the officers hired instead of Plaintiff had 12 traffic citations on his driving record between 2008 and 2017 and failed to appear in court five times, with five instances of his license being suspended. According to the report, the officer's license was suspended four months before he was hired.

70. Sgt. Gibson recommended all of these candidates for hire instead of processing Plaintiff's background check, which would have resulted in a finding that he was fully qualified to be hired.

71. DHPD  disregarded established hiring practices in order to avoid processing Plaintiff's background check and instead hire unqualified officers under the age of 40.

72. City Mayor Eddie Martin admitted in an interview made public following the Audit that the Audit "found a lot of irregularities in the police department, hiring practices . . ."

73. There was nothing in Plaintiff's background that would have impeded his being hired, absent unlawful discrimination.

74. Plaintiff's age was the "but for" cause of the Defendants'  (1) failure to process his background check; (2) failure to hire him; (3) allowing Plaintiff's certification to lapse, through delay; and (4) refusal to assist Plaintiff in curing the lapse.

75.   The Maryland State Police also opened an administrative investigation into the improper hiring practices by the DHPD.

76.   Ultimately, and upon information and belief, both Chief Gibson and Sgt. Gibson were removed from their positions because of, in large part, the wrongful hiring practices in the DHPD.

77.   Defendants' actions were purposeful, willful and deliberately a violation of the law.

78.   WHEREFORE, Plaintiff respectfully requests that the Court:

   a.   DECLARE that Defendants have violated the federal Age Discrimination in Employment Act;

   b.   AWARD Plaintiff economic damages in an amount to be determined at trial;

   c.   AWARD Plaintiff liquidated damages in an amount to be determined at trial;

   d.   ENJOIN Defendants from engaging in further discrimination in employment;

   e.   AWARD Plaintiff attorney fees, costs, interests and any additional relief to which the Court deems Plaintiff entitled.

Jury Demand

Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

Laurence S. Kaye /s/

Laurence S. Kaye (Bar No. 10988)

THE KAYE LAW FIRM, LLC

12956 Valewood Drive

Naples, FL 34119 [2]

(301) 984-0011

Lkaye@TheKayeLawFirm.com

Counsel to Plaintiff

---

[2]Plaintiff's counsel is currently working at his Florida home during the pandemic, and this address is the best address to ensure that any correspondence from the Court reaches Plaintiff's counsel expeditiously.